## Henry O. McDaid

### *v.*

### Francis M. Call.

*Filed at Mt. Vernon September 27, 1884.*

1. PURCHASER—*protected against secret trust or equities of a former owner.* The owner of a leasehold estate conveyed the same to a party as trustee, but the conveyances in every other respect were absolute deeds in form, yet in fact they were mortgages to secure the payment of money borrowed. The grantee negotiated a sale of the property, and the grantor, when called on by the trustee and purchaser, disclaimed any interest in the property, and agreed to make a quitclaim deed. The purchaser transferred his purchase to another, and the trustee made him a warranty deed for the premises, and the former owner then made the trustee a quitclaim deed, and this latter purchaser sold and conveyed the property to another, who had no notice of any equities in favor of the original owner: *Held,* that the last grantee

took the title unaffected by any equities the original owner might have had, or the party of whom he borrowed the money, and for whose benefit the first deeds were made.

2. A person taking a conveyance of a leasehold estate from one having a perfect title of record, without notice, and for a full consideration, will be protected from any secret equities in favor of a former owner and those claiming under him, and will not be held responsible for acts of bad faith on the part of those from whom he acquires the title.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Mr. H. O. McDAID, *pro se:*

Hoyne and Call had constructive notice that the deeds from appellant to Gibbs, trustee, were mortgages. Whatever is sufficient to put a party upon inquiry, is notice. *Doyle* v. *Teas,* 4 Scam. 202; *Alwood* v. *Mansfield,* 59 Ill. 496; *Redden* v. *Miller,* 95 id. 336; *Shepardson* v. *Stevens,* 71 id. 646; *Ætna Life Ins. Co.* v. *Ford,* 89 id. 252; *Cox* v. *Milner,* 23 id. 476; *Smith* v. *Ayer,* 101 U. S. 320.

A purchaser is bound to take notice from the recitals in the deeds constituting the chain of title. *Spaids* v. *Insurance Co.* 99 Ill. 249; *Railroad Co.* v. *Kennedy,* 70 id. 350; *Blaisdell* v. *Stevens,* 16 Vt. 479; *Dudley* v. *Warner,* 46 Ala. 664; *Rupert* v. *Marks,* 15 Ill. 540; *Morrison* v. *Kelly,* 22 id. 610; *Morris* v. *Hogle,* 37 id. 150; *McConnell* v. *Read,* 4 Scam. 117; *Stumpf* v. *Osterhage,* 94 Ill. 115.

The words "trustee," and "as trustee," after the name of the grantee, were notice of the grantor's equities. *Sturtevant* v. *Jaques,* 14 Allen, 523; *Shaw* v. *Spencer,* 100 Mass. 382.

Independent of the registry laws, a party can not convey any greater title than he has. *Lee* v. *Getty,* 26 Ill. 76; *Purdy* v. *Huntington,* 42 N. Y. 334; *Delano* v. *Bennett,* 90 Ill. 533.

A deed of a mortgagor to a mortgagee always provokes inquiry. *Enner* v. *Thompson,* 46 Ill. 222; *Sutphen* v. *Cushman,* 35 id. 197; Jones on Mortgages, sec. 872.

Before a purchaser can be protected he must have paid the whole consideration. *Brown* v. *Welch,* 18 Ill. 343; *Keys* v. *Test,* 33 id. 316.

No estoppel by deed, so-called, can be successfully urged against redeeming from an absolute deed, if it is, in fact, a mortgage. *Sutphen* v. *Cushman,* 35 Ill. 197; *Enner* v. *Thompson,* 46 id. 222.

It can not be said that this unrecorded quitclaim deed, which this record shows has been decreed to have been a mortgage, only, constitutes a link in the chain of title. *Lee* v. *Getty,* 26 Ill. 76; 3 Washburn on Real Prop. 352.

Mr. JAMES R. MANN, for the appellee:

The word "trustee," attached to a name, is merely descriptive, and does not limit liability or authority, and is not notice of a trust. *Powers* v. *Briggs,* 79 Ill. 493; *Allen* v. *Woodruff,* 96 id. 24.

Parties have a right to treat a deed given as a security, as an absolute deed. *Carpenter* v. *Carpenter,* 70 Ill. 462; *Brown* v. *Gaffney,* 28 id. 155; *Fay* v. *Valentine,* 12 Pick. 40.

Huey was entitled to believe the whole information received from Gibbs, and to believe that part stating that McDaid's interest had ceased. *Buttrick* v. *Holden,* 13 Metc. 355; *Calais Steamboat Co.* v. *Van Pelt's Admr.* 2 Black. 377.

The fact that knowledge that an absolute conveyance was intended as a secret mortgage was brought home to a subsequent purchaser, should be plainly proven, and the burden is on the party seeking to redeem. *Maxfield* v. *Patchen,* 29 Ill. 42.

The question is not whether the subsequent purchaser might not have learned the facts, but whether his failure to do so was an act of gross or culpable negligence. *Grundies* v. *Reid,* 107 Ill. 304; *Jones* v. *Smith,* 1 Hare's Ch. 55; *Ware* v. *Lord Egmont,* 4 DeG. M. & G. 473; *Hamilton* v. *Marks,* 63 Mo. 167; Story's Eq. Jur. (12th ed.) 382.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is a controversy about the title to a leasehold estate in a lot of ground on State street, in the city of Chicago, and referred to in the record, by witnesses, as the "State street property." In 1874, Marcus C. Stearns, being the owner in fee of the property, executed a lease thereon to Charles C. Fisher, for the term of ninety-nine years, which subsequently came to the appellant, Henry O. McDaid, by assignment, who, in April, 1879, was the owner thereof, subject to certain incumbrances not necessary to mention. Being thus owner, on the 21st of April, 1879, McDaid conveyed the property, by special warranty deed, to George A. Gibbs, and on May 10th of the following month, McDaid executed to him another special warranty deed for the same property. The first of these deeds is made to "George A. Gibbs, *trustee,*" and the last one is made to George A. Gibbs, "as trustee," and its operation is expressly limited to the leasehold interest. Both the deeds, though absolute in form, were, as between the immediate parties, in legal effect mortgages only. The first was given to secure a loan of $1000, evidenced by McDaid's note to Benjamin F. Crosby and George A. Gibbs, bearing date April 22, 1879, and payable at sixty days. The second deed was executed to secure a loan of $2355.55, evidenced by McDaid's note of same date to Calista M. King, payable ninety days after date. Both deeds were recorded on the 12th day of May, 1879. To each of the above notes was attached an instrument or memorandum, showing that McDaid had deposited with the payee, as security for its payment, among other things, "a deed of the said McDaid, under a certain lease, between Marcus C. Stearns and Charles C. Fisher, dated August 20, 1874," of the property in question, and to each was also attached a power of attorney, executed by the maker, authorizing the confession of a judgment thereon. On the 4th of June, 1879, Crosby and Gibbs borrowed of

James Crow $2000, for which they gave their note, at ninety days, to secure the payment of which they turned over to Crow the two notes of McDaid, above mentioned, with the memoranda thereto attached, each being indorsed· in blank, and Crosby swears he told Crow, at the time, these deeds of McDaid were mortgages on the property. Upon the execution of the above mentioned conveyances by McDaid to Gibbs, the latter assumed exclusive control of the property, and treated it in every respect as if he were the absolute owner. In May, 1881, negotiations were instituted between Gibbs and the appellee, Francis M. Call, for the purchase by the latter of the leasehold interest in the property, which resulted in a proposition from Gibbs to sell the same for $11,500. This proposition was accepted, subject to the condition the title was satisfactory, and Call made a deposit of $500, under the agreement. Shortly afterwards, Gibbs, under the directions of Call, delivered to J. S. Huey, (Call's attorney,) the abstract of title to the property, for examination. Huey, on discovering the word "trustee" after Gibbs' name, in the deeds from McDaid, called on Gibbs for an explanation, which being given, Huey informed him it would be necessary to obtain a quitclaim deed from McDaid and releases from his creditors, and for this purpose· Huey and Gibbs together called on McDaid, and according to the testimony of Huey, McDaid, in their presence, disclaimed having any interest in the property, and expressed a.willingness to execute a quitclaim deed. There is some conflict, however, between the witnesses, both as to when this interview took place and also as to what passed between the parties. However this may be, and without expressing any opinion as to whose recollection is correct in the matter, it is sufficient for the purposes of a decision of the case, the title of the property was being investigated with a view of purchase, and that McDaid subsequently made a conveyance of it to·Hoyne. Gibbs, on his part, proceeded to obtain releases from McDaid's judgment creditors,

and succeeded in getting them from all except one. Pending these matters, Michael A. Hoyne, being desirous of purchasing the lease in question, proposed to pay Call a bonus of $500 for his contract with Gibbs. Call accepted the proposition, and by mutual consent of all parties concerned, Hoyne became the purchaser of the property instead of Call, and received from Gibbs, "trustee," a warranty deed therefor, bearing date June 1, 1881, which was duly recorded on the 21st of the same month. McDaid, by quitclaim deed bearing date June 16, 1881, conveyed the premises to George A. Gibbs, which was recorded on the 24th of July, 1882. Of course whatever interest, if any, passed by this deed, inured to Hoyne, by virtue of Gibbs' warranty deed of June 1, 1881. Michael A. Hoyne, by deed bearing date June 27, 1881, re-sold and conveyed the property in controversy to Francis M. Call, the deed being duly recorded on the 30th of the same month.

Such being the condition of the title to the property, and of the relations of the parties heretofore mentioned with respect to it, James Crow, on the 10th day of March, 1882, filed in the circuit court of Cook county the original bill in this cause, for the purpose of foreclosing his alleged mortgage on the property, making Crosby, Gibbs, McDaid, Call and Hoyne, parties thereto. Hoyne answered, and disclaimed. Call answered that he was a purchaser for a valuable consideration, without notice. McDaid answered, and filed a cross-bill claiming to be the equitable owner of the property, subject to the alleged incumbrances heretofore mentioned. The court, on the hearing, dismissed the original bill as to Call and Hoyne, and also McDaid's cross-bill as to all the defendants, and the decree, on appeal to the Appellate Court for the First District, was affirmed. McDaid alone appealed from the judgment of the Appellate Court, and the record is now before us for review.

In the view we take of this case we do not deem it necessary to pass upon the legal question, whether, where one who claims through a conveyance wherein the grantee is desig-

nated "trustee," or where the conveyance is made to him "as trustee," and the deed is otherwise absolute in form, and contains no limitation on the power of the grantee to convey, nor gives any intimation as to the character of the trust, assuming one to exist, as was the case here, will be bound by any latent equities that may exist between the grantee in such conveyance and some undisclosed beneficiary. Nor do we deem it necessary to determine whether either Hoyne or Call, prior to the conveyances made to them, respectively, had actual notice of the alleged equities of McDaid, for, admitting both these propositions must be answered in the affirmative, about which we express no opinion, we still think the decree in the case is clearly right.

Assuming, then, for the purposes of the argument, that Hoyne and Call both originally had notice of McDaid's equities, yet when McDaid, pending these transactions, quitclaimed to Gibbs, this clearly operated, *prima facie*, as a release of the mortgage, and clothed Hoyne with the apparent absolute title.

It is claimed, however, that this quitclaim deed was nothing more than an additional mortgage. Concede this to be true, and that it was so understood between the parties to it, still, there is not the slightest foundation for the claim that Call had any notice or knowledge of that fact. By reason of its execution, Hoyne was clothed with the apparent ownership of the property. He had a perfect title of record, and Call, in purchasing from him, had a right to rely on it, as he did, and his title must be protected. If others have acted in bad faith with McDaid, as claimed, the consequences of it surely ought not to be visited upon Call, who is in no sense responsible for it.

The decree of the court below being in harmony with this view of the matter, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*